I'll take a shot at reserving five minutes. I know it's my responsibility to keep track. May it please the court, my name is Michael King, along with Jason Anderson and Adam Springle, who are with me at council table. I'm here today on behalf of the Catives and Appellants, who represent a class of nearly 400 former members of the Blackrock Golf and Country Club. The class seeks the reimbursement of refundable membership deposits they paid when they joined Blackrock. There are four undisputed facts central to the resolution of this appeal, which I would like to take just a moment at the outset to set forth. One, the class members became entitled under their club membership agreements to a refund of their deposits when the club was closed within 30 days of that closing. Two, the deposits have not been refunded. Three, the defendants accepted an assignment of the class members' club membership agreements. Four, after the assignment, the defendants accepted the benefits of the class members' performance  agreements of over $1,800,000 in dues and fees, which were used to keep the club operating until the defendants sold it for $6 million. Now, the defendants deny they assumed any duty, express or implied, to refund. The district court dismissed the members' express assumption claim on summary judgment, and a jury rejected their implied assumption claim. We seek an appellate judgment as a matter of law on either the express or implied assumption claim, or alternatively, a trial of the express assumption claim and a retrial of the implied assumption claim. Where did the district court go wrong on the express assumption issue in granting summary judgment? Here's where the district court went wrong, Your Honor. The district court did not go wrong when it analyzed the suggestion of the defendants, which has been repeated here, that there was an express disclaimer of the liabilities in question. In fact, if you turn to the district court's order on that point and look at ER 118 through 121, you see the district court rejecting the suggestion that the provisions now cited by the defendants, 7.4, 9.10, and 9.12, constitute as a matter of law. That's in lieu of agreement. Right, the agreement of a deed in lieu. So the district court rejected the notion that those provisions could support throwing out the express assumption claim as a matter of law. Now that leaves the other claim of the bank, which I think is necessarily the underpinnings of the district court's reasoning. And that is the claim that under Washington law, to find an express assumption, you've got to find it within the four corners of the contract of assumption. You've got to have an assignment within the four corners, and you've got to have language of express assumption within the four corners. And you'll recall that the district court said, at pages 28 and 29 of its ruling, this is ER 112 and 113, that at least in the district court's view, the writing was clear. Well, that means that the district court wasn't even trying to suggest that the extrinsic evidence would be clear. And this is the source of the error, Your Honor. Well, the problem is that when I read your brief, I felt like you were conflating the elements of the express assumption and the implied assumption. In other words, you were taking the elements out of the implied assumption and trying to imply those back into the express assumption, which to me means there's really no difference in either one of these theories. You follow what I mean? In other words, you understand what I mean by conflating the two? Oh, yes. I believe I do. All right. All right. Explain why that's not what happened. I think what Your Honor's referring to is actually not a conflation, but an overlap. In short, in terms of extrinsic evidence analysis under the context rule, you look at several things. And one of the things that you look at is the subsequent course of conduct, the course of performance of the parties under the agreement. But in the context of a dispute about an assignment and whether there's been an assumption, in the implied assumption area, you're looking at the same evidence. Because the course of conduct can be. But you lost on the implied assumption before the jury. The jury decided against your client on those issues. So how can those relate back to the expressed assumption? Oh, very straightforwardly, Your Honor. Because the jury was told, in terms of implied assumption, the jury was told in instruction number two, I believe it was, that the judge has decided that there's been no expressed assumption. So then we have the problem of the jury examining the implied assumption issue under instruction number 37 and looking at all of those factors. This is ER333. All the circumstances surrounding the assignment of the contract, the events occurring in relation to the assigned contract, the subject matter of the contract. The problem is that they're evaluating that, being told, ah, but there's one thing that's already on the table decided in favor of the defendants, that there was no express assumption. Well, if the district court was wrong about whether express assumption should be thrown out as a matter of law, if we should have had a trial on express assumption, then the district court is not going to be telling the jury, which is not being asked a series of questions about whether this factor is present, this factor is present, and this factor is present. Instead, they're being asked to draw the overall conclusion about whether there's an implied assumption. We are prejudiced in the jury's evaluation of those factors. The second point I would add, Your Honor, if I could flip over to implied assumption for a moment, is that as a matter of the law of implied assumption in Washington, if you have a straightforward example of a party in the defendant's position who didn't expressly assume, but then proceeds to accept the benefits of the performance by the party in my client's position, then they have stepped into the shoes of the assignor, the LLC, that originally owed that obligation. And they've got to perform. Isn't that exactly what the law says doesn't happen, unless there's an express assignment? No, actually, that is exactly what the law in Washington says does happen. And that's the Dahlem case. And this is the critical language from the Dahlem case. The appellant, in exacting and accepting them, the respondent's payments, assumed the corresponding duty to perform the conditions the contract imposed as a consideration for their payment. There was no express assumption in Dahlem. This came along with the second assignment. The Johnson versus Fedholm case says that an assignee of an executory contract is not liable on the underlying obligation absent an express assumption of those obligations. And Johnson is the Ninth Circuit case applying Washington law, if I remember correctly. And there is an express statement in the contract at issue in Johnson, where there is a retention of responsibility of the assignor. Or conversely, no, the language says that the assignment does not carry with it the obligation of the assignee to perform the servicing. There was a servicing issue there. Something got screwed up. Somebody sent in their payments, and the servicing function broke down. And in Johnson, very specifically, this court noted that the language of the assignment was subject to this retention clause, that the assignee was not taking on the servicing issue, and the servicing issue was, of course, the problem. Now, you can have an issue in the express assignment context where the attempt to use extrinsic evidence fails because you could have a direct contradiction with the language of the contract that's being assigned, but you still consider the extrinsic evidence if you don't have that contradiction. Hardinger v. Fullerton, Washington Supreme Court case from 1931, is absolutely on all fours on this legal issue. In Hardinger, the Court said that it is incorrect that you cannot determine the question of express assumption except within the confines of the end. Hardinger, by the way, is cited by both sides in the briefing. In Hardinger, the Court pointed out that the express assumption can be found by evidence extrinsic to the written contract, just as long as the extrinsic evidence does not, quote, overthrow the contract. Isn't that what happened here? I mean, you're saying, I think, the total indebtedness was $27 million? Is that what it was? That's what you're seeking to recover? Well, there was a contingent liability being carried on the books that if the refund obligation is triggered all at once to everybody, it would be $26 million. That's right. And the only way that happens is the unusual circumstance, which happened here, which is the club was closed. And there's no disputing, and the district court agreed, that as a result, and I believe the jury was instructed on this, but of course, we're dealing with a summary judgment in any case before we get to the jury. Isn't that something like twice the amount the bank actually loaned on this case? I'm trying to remember. Was it around $12 million or something like that? It's more than twice, because the bank loaned something like $12 million, and when it got to August 2010, they were trying to deal with trying to claw back as much of $9.5 million that was ultimately owed. And what they got out of the sale of the club was $6 million. So they got back well over $0.50 on the remaining dollars. Now, here's why the situation here doesn't involve this seemingly manifest unfairness. Oh my gosh, you're saying that we assumed a $26 million obligation? No. What they knowingly and intentionally assumed, we submit that the extrinsic evidence shows, and if we get a chance to take this to a jury, for sure, we believe that we have a good chance of persuading a jury, that what the bank assumed knowingly was a risk, that it might get stuck with all of that, but the bank's hope was that the bank would proceed to pass that risk along to the new owners. So what the extrinsic evidence shows is that the bank recognized in the summer of 2010 that the club was underwater, there was a risk that other creditors were going to cause a bankruptcy filing, and that was going to impair the sale value of the club. The bank didn't want to foreclose because that was going to impair the sale value of the club. The bank needed the membership group intact in order to maximize the return from the sale of the club. The bank needed to keep the members comfortable, in place, assured, so they would continue to pay their dues and fees, which was necessary to keep the club operating and maximize its value. So the bank, and we submit that the writing is, at least part of it, is confirmatory of this. That's section 7.4. Yes, Your Honor, you have a? No, I'm just sitting here thinking that the bank could have lost $26 million by assuming what you say they assumed or proceeding under the circumstances which they did, and they only lost six. Why would they do that? Because they didn't assume a $26 million loss. What they did was they consciously, and the LLC and the bank entered into an agreement under which it was the intent of the parties, that the bank assume the obligation to perform the LLC's obligations. The bank assumed that. The bank did not believe that it was going to get stuck with the $26 million. The bank was aware of the $26 million possible liability, a future contingent liability. Under section 7.4, it expressly disclaimed the liabilities that had already occurred by the time of closing. Well, that future contingent liability is not something that had occurred. Presumably, the bank would have written this clause the way it would need in order to expressly disclaim. It didn't do that, and here's why. Because it needed to have the membership group intact. If the bank had taken over and announced, by the way, we're not going to perform any of the obligations that the LLC owned, that means that the members are confronting a situation of uncertainty, and they may decide, well, we're not going to perform either. We're going to resign. We're going to cease paying dues. I don't want anything more to do with this club. The membership base then implodes, and as the bank officers testified, it's in the summary judgment record and at trial, as they recognized, we can't have the membership base implode. So instead, what they did was consciously take a risk. The risk was that there might be a closure of the club on their watch, and if that happens, then they're going to be stuck. But the hope was that they would be able to pass this obligation along to the new owners. It would be seamless. They took an assignment of the membership agreement. They would pass those along to the new owners who would take an assignment of the membership agreements. The problem, of course, and all of this is related very well, and particularly in the context of a case about summary judgment, I think compellingly for establishing we have at least a fact issue to try on this. The problem is they ran smack up into a group of new owners who said, no. End it. Terminate them all. We will not take them on. We want them as new members paying new deposits to us, and that's where things went wrong for the bank. Now, that is the case. But which is the clause in either the agreement in lieu of foreclosure or any of the other two agreements where it's clear that they took an assignment of the membership agreements? Section 7.4, I think. Is that the one? It's the bill of sale that says you're taking an assignment of the membership agreements. The bill of sale? The bill of sale assigns all the contracts. And the jury was instructed, because there's no dispute about this, that they took an assignment. But did they also? But did they take an assignment of the membership agreement? Yes. And they also assumed the duty to perform. Now, on the latter question. Wait, wait, wait. So in the bill of sale, there's a number of subclauses. And there's an assignment of all contracts. Which is the one that says there's an assignment of the membership agreements? There is not one that says the membership agreements, but there is one that says all contracts of any kind. And there is no disputing they took an assignment. But that doesn't get me to where I need to get to, Judge Byron. Section 7.4 of the deed and foreclosure agreement says that the property pursuant to the terms of this agreement shall not create any obligations on the part of Washington Trust to third parties that have claims of any kind whatsoever to the LLC with respect to the property. Right. And we're not a third party. We are first parties to the contracts. We have first party rights if they've assumed the obligation. This is not a third party beneficiary issue. And moreover, 7.4 continues to read. Well, the contract was between the LLC and the bank. That's right. And there's an assignment of the contracts between the LLC and the members. And then the question becomes, did you just assign them, in which case under Washington law, presumptively, you don't have the burden to perform? Or did you also assume the obligations to perform? And that's why the district court pointed out that 7.4. Well, there's no. Correct. There's nothing expressed in the agreement that says that. There is nothing that says point blank. And we're assuming the duty to perform. So your only claim is that there's extrinsic evidence that demonstrates that there was an express agreement. No, that's not my only claim. I also have 7.4's other language, which only disclaims liabilities that have occurred prior to closing. The district court is. Well, at the time of the closing, wasn't the membership due amount, whatever you call it, wasn't that on the books as a liability? As a future liability, not as a current liability that had occurred. It was a liability. What's the difference between a very substantial one? At the time, they had to record it in their financial reports as a liability. As a future liability. It was a liability at the time of the transfer, wasn't it? Let me ask, was it a liability at the time of transfer or not? It was a contingent future liability. That is not. They still had to record it as a liability. I know, but it was. For purposes of financial rent. I mean, you can't say it's not a liability. I'm not saying it's not a liability. I'm saying it's not a liability that had occurred. It is there was no obligation to pay at that point. That's the point of the Gillespie case. That is the point of the plain definition of occur. It did not occur. But when the club went under, that's when it became a liability. When the club was closed, it became a liability. That was based on the agreement between the members and the LLC and the developer. My question is, why aren't your clients third party beneficiaries in this case? Because we're first parties to contracts that have been assigned. So the question becomes whether the intention of the LLC and Washington Trust was for Washington Trust not merely to accept an assignment, but also to agree to take on the LLC's duties. Now, I will concede that the conclusion can be drawn that the writing is ambiguous. But all that means is that we then consider the extrinsic evidence and the extrinsic evidence a jury could reasonably conclude supports that we are entitled to go after the defendants because they did assume the obligation. And that's the same evidence you used to try to prove your implied assumption. No, it's only part of that evidence. That is the course of performance evidence that overlaps. And I see that I'm running down. I'll give you two minutes for rebuttal. Why don't you just keep that 50 seconds and I'll add another two. All right, I appreciate that. Thank you very much, your honors. And I will await my rebuttal. Good morning, your honors. May it please the court. My name is Fred Burnside. I'm here representing Washington Trust Bank and Westbrook Avenue Holdings. With me is my partner, Rebecca Francis. Also in the courtroom today is the general counsel of Washington Trust Bank, Mr. Burke Jackowich and the commercial risk operations manager, Mr. Dean Oberst. I want to reorient the court to the actual issue before the court because Mr. King does an admirable job of weaving in and out of the different claims and raising all kinds of minutia. The question in this case for any kind of assumption is whether Washington Trust Bank, a secured creditor, knowing it was going to lose millions on its loan to a golf club, intended to voluntarily assume a known $30 million liability owed to unsecured creditors. Would Washington Trust Bank intend to become a guarantor to the club members? That makes no sense. The jury found that it made no sense. The jury heard nine days of testimony. The jury reviewed more than 180 exhibits on every factual issue. There is no evidence they have cited that they wanted to get in, that they didn't get in. Ultimately, this court should affirm because the jury rejected those claims. I want to divide my time here between two issues. First, I want to explain why the district court properly rejected their challenge to the verdict on implied assumption in two parts. It was properly instructed, and the evidence clearly supports the verdict. Second, I want to explain why the district court properly granted summary judgment on express assumption. Why don't you address express assumption first? Because I do find it, so he says that there's no language in any of the documents that evidences that you expressly. Correct, there is no evidence. So he said that, but what he says is, well, there's extraneous. We can look at extraneous evidence because this is somewhat ambiguous. And the district court acknowledged that and said, well, there's even some disputes here about what happened, but no reasonable trier of fact could conclude other than that there was not an express agreement here. Why isn't there a genuine factual dispute? There's no general genuine factual dispute because as your honors know, in the Johnson versus Freddie Mac case, the question is whether an assignee and an assignee in an executive contract is not liable on the underlying obligations absent and express assumption of those obligations. And Howell versus Kraft also said in our papers, court of appeals case, citing three Washington Supreme court decisions wrote the following. It is settled in this jurisdiction. The assignee of a contract assumes no obligation on any underlying contract unless by the terms of the instrument, he expressed the agreements to assume such obligation. The gaping hole in their case is they can't point to any writing signed by the bank where they said, we wanna take on this $30 million. So how does, you know, they keep arguing and I read their briefs and he made note of it here in his argument about, well, you can look at the extraneous evidence here and that can demonstrate that there was an expression. How do you square those doctrines with what you just read? Yeah, that's basically the Hearst extrinsic evidence rule in Washington. And that rule says you can look at the objective manifestations of the parties to determine what the words they used in the agreement mean. And they can't cite and haven't cited to any extrinsic evidence that show that the words we used in the agreement meant we were taking the $30 million in liability. That case also holds that you can't use extrinsic evidence to contradict the words of the agreement. And in this agreement, we have multiple disclaimers, which I'm happy to get into. Did that answer your question, Your Honor? Yes and no, which are the provisions that you'd say make it, not make it clear, but at least suggest that there was a disclaimer? Yeah, I mean, at the outset, we don't need a disclaimer because the law is we have to express the assumants. There has to be something in writing saying we took it. That's a presumption we did not. But the disclaimers, the broadest one that we rely on is paragraph 9.10, which reads, nothing in this agreement will be deemed to cause WTB to be liable or responsible in any way for the actions, liabilities, debts, or obligations of the club. It is impossible to write a disclaimer that is broader than that one. Now, what plaintiffs argued below is, yeah, but there's a heading there that says no partnership. So maybe it only applies to that. But section 9.19 of the Deed and Lieu says, headings are not part of the agreement. That is as broad a disclaimer as you can have in this context. Likewise, on the third-party beneficiary front, I think it is relevant. 9.12 says, look, this agreement is solely for the benefit of Washington Trust Bank and the Club at Blackrock. It does not enumerate to the benefit of any third parties, period. That says to club members, we're not taking on that liability. Finally, and this is in response to a question Your Honor raised earlier, paragraph 7.9c states that none of the personal property assets being transferred includes anything that has any liens, encumbrances, other adverse interests or defects, but for the John Deere leases, which were $650,000 in leases. So the parties clearly knew how to expressly assume an obligation. They did so with those leases. But this says we're not taking those contracts with liabilities. Okay. As to my question for plaintiff's counsel earlier, my concern when I read his brief about conflating the elements here of these two types of claims, I think that what you said just a minute ago goes to the issue that I had in mind. Quite frankly, the law here in Virginia, Washington sounds very much like the law in Georgia. When you have an express disclaimer, like there was in this case, you can't use extrinsic evidence. Is that the law? Is that, unless there's some kind of ambiguity that is required. Is that the law or not? The short answer is yes, that's the law, but I want to qualify that. It's the law insofar as, under the Hearst versus Seattle Times case, you can use extrinsic evidence, but you can't use it to contradict what the words actually say. Right. You can't use extrinsic evidence of the party's actual actions subsequent to the execution of the contract, which contradict the terms of the contract? I think you can, well, certainly all that evidence went before the jury, but I think under Hearst, I think the extrinsic evidence is irrelevant to what the party's intended with respect to the words on the page. And so, after the fact, we're not talking about the words on the page, but after the fact, we are talking about what did they do and what happened here. Let's talk about after the fact. Marshall Chesron filed bankruptcy and listed every club member as a creditor. Three club members filed proofs of claim. He testified, I had this liability. The club had this liability. That's subsequent conduct. They can't point to any conduct anywhere. Well, they point to the conduct that the bank continued to operate the golf club and received $1.8 million in fees. A few responses to that. First, receiving $1.8 million in fees for access to the club when access was provided doesn't mean you're agreeing to a $30 million liability. Second, we didn't get the $1.8 million. That money went to the club at Blackrock, which spent it as it saw fit. Judge Bush, in his 33-page Rule 50 order, spent 10 months writing it, goes through in exhaustive detail all of these facts, weighing them and saying, this was for the jury. All the points Mr. King is making, all the arguments he's making, are facts and evidence that were before the jury. The jury decided against them. That's not a reason to overturn the jury's verdict. Now, I know I'm getting into the implied assumption case and we're talking about the expressed assumption case, but the other thing I wanted to chat about, paragraph 7.4. They've spent a lot of time focusing on that paragraph, saying, well, the liability didn't occur before August 11th, 2010. But every member, when they signed the agreement, was guaranteed a refund in 30 years. 100% guaranteed. That was an obligation right then and there. You could get it sooner if you resigned and somebody else joined. There were other ways to do it, but it was an existing obligation that they knew about and expressly disclaimed. And in fact, plaintiff's own expert, Mr. Chatters, testified in deposition that listing that as a current liability on the balance sheet was consistent with generally accepted accounting principles. So they can't turn around now and say it wasn't really a liability. So I think we've got at least four disclaimers of liability. And the 7.9c1, Your Honor, goes to the question you asked. Were we assigned the contracts? We vehemently dispute that we were assigned the contracts. The court instructed the jury that we were and ruled for us anyway. But if you look at the language in there, in both the bill of sale and in the deed in lieu, it says all the contracts we're taking are attached in this exhibit to this document. And there is no deed in lieu exhibit that shows we're taking on this liability. It also says we're not taking anything that has any liabilities with it. So we don't believe we were ever signed the membership contracts. We think they were expressly disclaimed. And that's consistent with Marshall Chesron's testimony that he understood and the bank's testimony. He understood the liability stayed with him. Because what banker in his right mind would willingly take on $30 million in liability gratuitously? In fact, that gets to a point that I think helps frame the context here. And that is plaintiff cite not one case, not one, where a defendant disclaimed a liability and then later was found to have impliedly assumed it. And the Schwartz versus Pillsbury case from this court that we cite in our papers is directly on point there. The court there held it was implausible that a defendant that had disclaimed some liabilities and taken on others, like we did with the John Deere leases, would reverse this position and gratuitously agree to assume additional liabilities by implication through post-acquisition conduct. So with that context in mind, I want to shift to the implied assumption case. Your position would be that the trial court shouldn't have let this case go to the jury. Right, I mean, we don't think they should have gone to the jury anyway, but we won either way. So we have no obligation to appeal a verdict in our favor. Ultimately, with respect to the implied assumption case, I want to first focus on the jury instructions. They argued the jury instructions were wrong for two primary reasons. First, they say, well, the court used and instead of or, and that the court should have used or, and that any one factor, particularly the last three, should have been sufficient to allow a verdict in our favor. Now, the court did not hold that the jury had to find all of those as if they were elements. And again, the court's 33-page order on Rule 50 is very detailed in this regard. What it held was that the plaintiffs need to consider all the facts and circumstances. Because you need to consider, you must consider all facts and circumstances. And is entirely appropriate. In fact, this circuit's jury instructions, pattern jury instructions, use and in exactly the same way for a myriad instructions, including 1.14, 9.21, 9.24, you know, so on and so forth. It was entirely appropriate for the court to use and to list all the factors to consider. And plaintiffs were free to argue, as the court noted in its order. Plaintiffs were free to argue that any one of those was sufficient. In fact, they did. They argued that. The jury just didn't agree with them. That's not an explanation that the instructions are wrong. That's a crying over the fact that they lost. Isn't the word and, does that mean that the elements are conjunctive and must be found, all of them? Not when you read the rest of the instruction. Because the rest of the instruction says, consider, you must consider all the facts and circumstances, including. It didn't say you must find. It said you must consider. And they put in evidence on every factor, as did we. And the court exhaustively goes through all the evidence and explains why. There's certainly ample evidence to support the jury's verdict. And notably, plaintiffs, again, don't cite one case where they could point to where one factor or even two factors was sufficient to establish liability. It's all in the implied assumption context, all facts and circumstances. And I want to touch briefly on the Hardinger versus Fullerton case that plaintiffs' counsel talked about. Because I agree, it is on point. Because the court there held that is the rule, it is further the rule of the state that an assignee of an executive contract is not liable on the contract in the absence of an express assumption of the obligations of the contract, except where there are countervailing equities requiring deductions. And that's important because they have expressly disavowed bringing an equitable claim. Your Honor asked, aren't you third party beneficiaries? No, what they're saying is we're first parties. We're parties to the contract. But what they're asking for is an equitable claim, not a claim at law. The court uses as an example, if in the assignment it's obvious that the purchase price factored in the liability, then the equities will allow that to go forward and allow potentially an implied assumption. I mean, ultimately, broadly speaking, plaintiffs' cases involve situations where allowing the assignee to enjoy the benefits of the contract without responsibility for the obligations would lead to unjust enrichment. And we don't have that here. The members, well, the jury certainly considered all the evidence and found that the evidence didn't show we manifested an intent to assume the obligation. Ultimately, the district court in its Rule 50 order also cited the Hardinger versus Fullington. And it explained, because plaintiffs had objected saying, your instruction's wrong. It should say the contract rather than the obligation, making the argument, hey, if you take one thing, you've taken them all. And the court cites Hardinger to explain, no, it is a duty by duty analysis as to what you've assumed. Paying one titlist invoice too many doesn't subject us to $30 million in liability. It can't. And ultimately, the absurdity of saying we paid $1.8 million in dues and charges for access to the club, which they got, somehow means you're also agreeing to $30 million in liability you already disclaimed is absurd, and it's worth noting not one of the named plaintiffs actually paid any dues or charges during the period the bank had it. Not one, not a penny. So nonetheless, it just strikes me that all the implied assumption cases are tied to intent. They needed to show we intended to assume this obligation. They offered not one piece of evidence showing that we intended to assume the obligation. Each named plaintiff testified. The defendants never represented to them that they wanted it. What they're really offering evidence on is that Washington Trust Bank and West Sprague took steps to preserve the value of its collateral as it's required to do. And what they then want to argue is in effect, accidental intent. Well, you took care of your assets and therefore accidentally, intentionally assumed this obligation. And that is not the law in Washington. Again, the question for the jury was whether based on all the facts and circumstances, Washington Trust Bank or West Sprague engaged in conduct that manifested an intent to assume in the plaintiff's site the evidence that they think helps their case. The court discusses it in great detail in its order. The jury considered it all and ruled for the defendants. Which makes sense at the end of the day because again, what reasonable banker would take on $30 million in liability when it was already losing millions of dollars on its loans? And there's a weird irony here too. In that, if Mr. Chesron, the developer, had set aside their membership deposits in an account at Washington Trust Bank, an account that Washington Trust had a security interest in, it is undisputed under the UCC, the bank could have gone in and taken out all nine and a half million dollars and had no liability to the plaintiffs. So if we'd actually gotten their deposit refunds or their deposits, we wouldn't be liable. But somehow because we didn't get their money, we're obligated to refund it. I would submit, Your Honors, that makes no sense. Ultimately, we also disagree on the various factors they've gone through. We don't believe that the bank accepted the benefits of the contract. Ultimately, the dues and fees were insufficient to sustain the club. What that means is that for every dollar a member paid in dues and fees, they got a buck 50 in services at the expense of Washington Trust Bank. And what that means is losing slightly less money is not a benefit. And there's a Fifth Circuit Court of Appeals case which holds exactly that. That's the SMP Sales Management versus Fleet Credit Corp, 960. We just heard counsel say that in operating the club after the bank took it over. Yeah. They did that because they wanted to at least maintain the appearance that it was a functioning, well-managed entity that would be a viable sale opportunity. Certainly, the bank was interested in preserving the value of the asset, which is higher if it's a functioning, well-kept. If they let the grass grow, the golf course is worthless in two weeks. And so that's another point is, if they had done what plaintiffs apparently think they should have done and just walked away, their million-dollar mansions on a golf course would have a lot greater loss in value than $120,000 per member. I can guarantee you that. But actually, I've lost track of your question. No, I just, counsel was just arguing that, I mean. Arguing which? He emphasized that the bank benefited from maintaining the club and operating it and keeping it. But there's no explanation as to how the bank benefited there. I mean, ultimately, losing more money isn't benefiting. And ultimately, the testimony as the judge exhaustively goes through in its order is that Andy Gorton, the club manager, said, I didn't report to the bank. I reported to Chad Roundtree and Marshall Chesron, the developer. If the bank said one thing and they said another, I'd do what I wanted to do. I'd do what they said. Stacey, not Stacey Gray, Julie Shifflett, the consultant on site, didn't even have keys to the place. She had to wait at the security gate to be let in. We were not controlling anything. We didn't send out a bill. We didn't send out a charge. Nobody was suspended as a result of any failure to pay membership dues. And how do we know that? Because none of the name plaintiffs paid dues, yet none of them were suspended. Andy Gorton testified when there's suspension, a letter gets sent out. We produced hundreds of thousands of pages and there was no letter anybody ever got sent out during that period suspending them. You could have executed on property without continuing to operate the club. I would argue no, that we couldn't. Ultimately, that we have an obligation under the UCC, because ultimately, let's say for example, Your Honor, we just said, you know, we're not gonna operate the club. And then we go ahead and we sell it. And if we operated it, and say it would have sold for $15 million, we'd actually owe Mr. Chesroom the surplus in a UCC sale or a junior lien holder that came forward. We have an obligation to do that both under the UCC and under federal banking regulations, because if the bank loses its shirt on this, you know, Ma and Pa over there with their deposit accounts in the bank are being put at risk. And so the bank had an absolute obligation to do exactly what it did to preserve the value of the club. It only makes sense that it would do so. So I think I've touched on the implied assumption and the express assumption arguments. Ultimately, I think that the disclaimers we cite are more than sufficient to disclaim it in the express context. And in the implied context, I think that there is simply no basis to overturn the jury's verdict that considered all of the evidence that nothing the defendants did manifested an intent to assume the obligation. All the bank did was try and hold on to what little value it could in this process. And in the process, losing $4 million. Okay. Thank you. We appreciate your argument. I'll put two and a half minutes on the clock for rebuttal. Assuming a liability for $30 million is not the issue. Taking a risk of being stuck with that liability is what we maintain the bank did. The jury could have found that if our express assumption claim had at least gone to the jury. You've got a very important admission here and a series of questions about, well, what was the bank dealing with here? You got the admission that the bank was interested in preserving the value of the asset. Right. That is exactly our point. It wanted to sell. If it could sell for a decent price, it could substantially reduce the amount of the loss. And the maintaining of the membership base was critical to that. Now, what express disclaimer, your honors, is in this contract where there's an express disclaimer of assumption of the duty to perform the membership agreements. There is none as a matter of law and the district court found that. If you look at ER 119 through 121, the district court finds that section 7.4 favors us. The district court finds that 9.10 and 9.12 do nothing but raise fact issues. Why did the district court make the decision it did? Judge Pais, you asked about why isn't there a genuine fact issue? And the answer you got is exactly the one that the bank argued below as a theory of contract interpretation. And now here, it was, there has to be an assumption within the four corners, just within the four corners of the written contract of assignment. Hardinger says, that is not the Washington law. You are referred to the Howell case, a court of appeals intermediate decision from the 1970s that doesn't even discuss the role of extrinsic evidence. Hardinger is the answer to this. We do get to put on extrinsic evidence so long as we do not contradict the writing. So what contradiction is present when we've got ambiguous clauses going all over the place like this? You're told there was under the membership agreement a 30-year guarantee. If you hung around for 30 years, you would get the right for your deposit. Correct, if you did. But the $30 million number is adding up all of the membership's deposit rights and calculating what would happen if all of them had to be paid at once. I refer you to Barclay versus Kerfoot. This is not a liability that has occurred. It is a contingency. It might occur. Your honors, we ask you at the least to send us back for the trial on express assumption we never got. And because that prejudiced the trial on implied assumption, we should get a trial on that claim too, a retrial. Thank you. Okay, thank you, counsel. We appreciate your arguments in this interesting case. The matter is submitted at this time. We'll end our session for today.
judges: Paez, Bea, Royal